## UNITED STATES ex rel. CAMPBELL et al. v. INTERSTATE COMMERCE COMMISSION.*
### No. 5816.

Court of Appeals of the District of Columbia.
Argued Jan. 6, 1933.
Decided Jan. 30, 1933.

Johnston B. Campbell and A. Henry Walter, both of Washington, D. C., for appellants.

Edward M. Reidy, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia dismissing a petition for a writ of mandamus

*Judgment reversed 53 S. Ct. 607, 77 L. Ed. —.

to the Interstate Commerce Commission. The commission answered the petition, and petitioner demurred. The court overruled the demurrer and entered judgment for the commission.

Petitioner is a partnership, successor to a West Virginia corporation of the same name. Disregarding this change in character, we shall speak of petitioner and its predecessor as appellant.

Appellant was engaged in the lumber business. Early in 1927 it filed with the commission a complaint charging certain violations of the Interstate Commerce Act by the Strouds Creek & Muddlety Railroad Company, the Baltimore & Ohio Railroad Company, and other connecting carriers, and alleging damage by reason of the violation. It asked for an order against the railroads to "cease and desist" and for reparation for their unlawful acts within the statutory period. Appellant's mills are located on the Strouds Creek Railroad at Tioga, W. Va., 7.1 miles distant from the junction point of the Baltimore & Ohio and Strouds Creek, at Allingdale, W. Va. Appellant's lumber was shipped on through bills of lading from Tioga to interstate destinations on lines of Strouds Creek, Baltimore & Ohio, and connecting carriers via Allingdale. Appellant was compelled to pay the Allingdale group rate plus the Strouds Creek Railroad charge of $15 per car.

The commission found that appellant's competitors, having their mills within the Allingdale group and located on branch lines of the Baltimore & Ohio, paid only the Allingdale rate, which was $15 per car less than the charges exacted of appellant for the service from its mills to the same destinations. The result of this was that appellant was required to pay $15 more for each car of lumber shipped than its competitors. The commission likewise found that appellant's prices were all quoted f. o. b. Allingdale; that it sold its lumber in competition with that produced in the same general territory, and was forced to base its price on the group rates and to absorb the $15 per car charge of the Strouds Creek road. In these circumstances the commission found that the through interstate rates exacted of appellant "were, are, and for the future will be unduly prejudicial to complainant and unduly preferential to its competitors in the same general origin territory to the extent that they exceeded, exceed, or may exceed the rates contemporaneously maintained on like traffic from the group which includes Allingdale, West Virginia,"

and consequently entered an order requiring the railroads participating in transportation of appellant's lumber within the United States to cease and desist, etc. But the commission also found that "the record will not support an award of reparation based on the undue prejudice found to exist." The conclusion last stated is the bone of contention.

On behalf of the commission it is insisted that mandamus will not lie in a matter involving the exercise of judgment or discretion and that this is such a case, and in support of this it says that the recovery of damages by a shipper on account of a discriminatory rate involves a judicial inquiry of facts on the one hand and discretion in technical matters on the other, and that the commission, by reason of its more expert appreciation of the intricacies of transportation, is in a better position to reach a correct determination, and that its conclusion thus reached, being discretionary, may not be impeached in a proceeding by mandamus. It urges also the well-established rule that mandamus cannot be used as an appeal or to perform the functions of a writ of error. To sustain its position here it relies largely upon the cases of I. C. C. v. U. S. ex rel. Members of Waste Merchants' Association, 260 U. S. 32, 43 S. Ct. 6, 67 L. Ed. 112, and particularly Donner Steel Co. v. I. C. C., 52 App. D. C. 221, 285 F. 955, a decision of this court in which certiorari was denied.

We have, therefore, here a case in which the commission has found that appellant has been required to pay transportation charges which are unduly prejudicial to the extent of $15 per car; that appellant's competitors enjoyed a $15 less per car rate; and that appellant was forced to base its price on its competitors' price and itself absorb the $15 unlawful charge, but in which the commission nevertheless refuses to award reparation.

The Interstate Commerce Act (USCA, tit. 49), in section 3 (49 USCA § 3), makes it unlawful for a common carrier to subject a shipper "to any undue or unreasonable prejudice or disadvantage in any respect whatsoever," and section 8 (49 USCA § 8) makes the carrier which shall do so liable to the person injured for the full amount of damages sustained in consequence of such violation. It gives such person (section 9 [49 USCA § 9]) the right to recover either before the commission or in the federal courts but requires an election of forum. If the election is to proceed before the commission, the person injured is required to state the facts, upon which it becomes the duty of the commission,

unless reparation is voluntarily made, to investigate the complaint and likewise to make an award of reparation if after hearing it shall determine the shipper was damaged.

Section 16 (1), 49 USCA § 16 (1) is as follows: "If, after hearing on a complaint made as provided in section 13 of this chapter, the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter for a violation thereof, the commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named."

■ From what we have already said, it is obvious that in this case appellant has shown, and the commission has found, the violation of law complained of, and likewise that appellant had sustained an injury and pecuniary loss by reason of the injury to the extent of $15 for each car of lumber shipped within the statutory period. In these circumstances it would seem to us that there is no ground upon which refusal on the part of the commission to enter the order for reparation can be sustained. But the contrary of this is nevertheless urged, and it is insisted that the commission having said that appellant is not entitled to reparation, that question is foreclosed and to award the writ would be to require it to make an award contrary to its judgment and discretion. In other words, that its determination of the fact is the exercise of a jurisdiction conferred upon it by law, and that to challenge this by mandamus would be to convert the writ into an appeal or writ or error, which it has been repeatedly held may not be done.

But this reasoning does not appeal to us. The object and purpose of the act are clear. It was passed to require not only just and reasonable railroad rates but also to preserve to shippers equal competition by the maintenance of equality of rates and thus equality of opportunity, and so in a case in which, as in this, the question is one of competitive rates or charges discriminatory as between shippers in the same territory, gives power to the commission, when such a charge is sustained, to do two things—to require the carrier to cease and to require it to make reparation to the injured shipper. It is quite true that the act gives the commission wide latitude and great powers, and properly so, and it is equally true that in a proceeding of this nature a court will not review the decision of the commission on the merits or compel a particular exercise by the commission of its judgment or discretion, but where the commission has exercised all of its jurisdiction and exhausted all its discretion and has made a definite, conclusive, understandable finding of facts, including the fact of damage and the fact of loss sustained thereby, the question is not one of those stated above, but is rather whether in such circumstances the writ is one to require the commission to perform a specific duty prescribed by the act. We think it is, and we likewise think that to reach a different conclusion would require us to confess our impotency to correct a judgment of the commission based on a conclusion not only unsupported by facts but directly in the teeth of its own findings of facts. This we are unwilling to do.

But it is insisted by the commission that this is just what we did do, in the Donner Steel Co. Case, supra. That there is a similarity between that and this case is undeniable, and in deciding that case we expressed our disapproval with the conclusion we felt obliged to reach. It therefore has no very great margin, and we are not disposed to increase it. But, without regard to this, we think that the cases are easily distinguishable. The Donner Case involved a service performed by the carrier of "spotting" cars, and in which it was alleged that the service was performed for some and denied to others, and this practice the commission found prejudicial and in violation of section 3 of the act, but the commission also found that the complainant there had not shown that its profits would have been any greater had the existing discrimination and prejudice been removed, "or that it has suffered any damage of which such discrimination and prejudice are the proximate cause." Our conclusion in refusing to order the writ to issue was based on the ground that the commission had definitely and unmistakably decided from the evidence before it that the shipper had not been damaged, and it is interesting to note that after our decision a petition for rehearing was granted by the commission in which the shipper asked a reconsideration by the commission of this question of fact. The ground of asking was the apparent inconsistency between the conclusion and that in Buffalo Union Furnace Co. v. L. S. & M. S. Ry. Co., 44 I. C. C. 267. In its decision again denying the shipper's claim for reparation, the commission distinguished the facts in the Buffalo Case from those in the Donner Steel Case, pointing out that in the former case it was shown that the shipper was compelled to absorb the cost of certain terminal switching out of its profits and that from this it "inevitably" followed that the shipper suffered a loss

in profits measured by the cost of this switching service, and therefore was damaged to that extent, but this, the commission said, was not true in the Donner Case.

Here, as we have already seen, the facts found by the commission are in all respects similar to those found in the Buffalo Union Case, and therefore the instant case differs from the Donner Steel Case in the same respect as the Buffalo Union Case differed from that case. This makes it apparent that the Donner Case does not control this.

Nor is there anything in I. C. C. v. Waste Merchants' Association, supra, which may be considered as controlling our decision here. That case and this are wholly different. There, as the Supreme Court said, the rates were neither unreasonable nor discriminatory, nor in violation of the act. The conditions there found were an incident of the World War. The arrangement for loading was voluntary and beneficial to the shipper. There was no provision in the tariffs for the allowance to shippers who themselves loaded their cars. Since, therefore, neither of the cases relied on by the commission controls the decision here, we are free to answer the question as we think it should be answered.

If we should hold that the commission may not be required to reach a conclusion consonant with its own findings, section 16 of the act would, we think, be meaningless. It would be to construe the language of the section, "If the commission shall determine that any party complainant is entitled to an award of damages," to mean that the discretion of the commission, to "determine," was not subject to challenge on any ground and that the commission's ipse dixit would control against the plain mandate of the act. We think this is not the law.

In this case the commission has found, as we have pointed out, unlawfulness of rate, injury and damage, and the amount of loss. In these circumstances nothing more is necessary than the mere matter of the multiplication of the number of cars by the ascertained overpayment per car. If there is any other element entering into the computation of damages which might change this result, there is nothing in the commission's findings of facts to indicate it. The statement is made by the commission that appellant's prices are fixed by the prices of its competitors who enjoy the $15 preferential. If this were not true, or if appellant's prices were only partially so controlled, a different case might be made, and in such circumstances appellant's loss would be computed on a different basis. But nothing of this sort appears, and the only suggestion of justification for the commission's refusal to make the award, and this was made in the argument, is that appellant in producing its lumber may have an advantage of operating and labor cost which its competitors do not have. We do not think this fact, even if it be true, would reduce appellant's recoverable damages under the statute. In such circumstances, in view of the finding of equality of price with its competitors, its profits would have been greater to the extent of its lower cost of production; but when, on the other hand, as appears from the findings of fact, it was required to reduce its profits $15 per car by the prejudicial rate it was forced to pay, the latter figure in the circumstances necessarily represents its damages, since obviously otherwise its profits would have been that much more.

Hence it follows that the determination of the commission that reparation should not be awarded is a mere conclusion contrary to its own findings of fact and therefore contrary to the provisions of the act. In such a case the granting of the writ is not the control of a particular discretion or a substitution of the judgment of this court for that of the commission, but a lawful order to the commission to carry into effect the plain result of the exercise by it of its discretion—a situation in all respects analogous to an order to an inferior court to sign a judgment which it rendered but refused to sign. Any other conclusion than this, it seems to us, would be an anomaly and would amount to saying that an essential duty of the commission is beyond review, for appellant has no other remedy. Procter & Gamble Co. v. U. S., 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091.

We think the lower court was in error in refusing to issue the writ, and the case will be remanded with instructions that the judgment be set aside and the writ issue to the commission requiring it to assess the damages sustained in accordance with the provisions of the act and to enter the appropriate order thereon.

Reversed and remanded.